# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

MADELINE HINDMARSH,

        Plaintiff,

    vs.                                       CIV No. 98-1280 JP/KBM

FOWLER FITNESS, INC.,
d/b/a Defined Fitness,

        Defendant.


## MEMORANDUM OPINION AND ORDER

On November 8, 1999 Defendant filed a Motion for Summary Judgment, (Docket No. 33). After carefully considering the law, the pleadings, and the briefs, I conclude that Defendant's motion should be granted in part and denied in part.

## I.      BACKGROUND

Defendant Fowler Fitness, Inc. owns and operates a fitness gym in Albuquerque, New Mexico called Defined Fitness. On September 1, 1992 Defendant hired Plaintiff to work at Defined Fitness as an aerobics instructor. Early in her employment Plaintiff sought a position as a personal trainer. Defendant contends that to become a personal trainer, an applicant must have passed Defendant's Personal Evaluation in Anatomy and Kinesiology exam ("PEAK exam"), which consists of both a written and a practical section. According to Defendant, it has consistently stated that an applicant must successfully complete each section of the exam before being considered for a personal trainer position, although successfully passing the PEAK exam

does not guarantee a personal trainer position. Plaintiff claims that an unidentified handbook states only that the PEAK exam must be completed at some time during employment and that other employees were promoted to be a personal trainer despite having failed or never having taken the PEAK exam.

In March 1994, Plaintiff took the PEAK exam and passed the practical section. Although it is unclear from the record whether Plaintiff passed the written section of the exam, she testified that when she turned in the written section, she asked the Director of Aerobics and Fitness, Daren Parks, whether she could take the exam again because she knew she had not done well. Therefore, while Plaintiff apparently never received a graded copy of the March 1994 written exam, it appears from the record that she concedes that she failed it.[1] (Hindmarsh Depo. at 31, Ex. 1 to Resp.)

While Plaintiff wanted to retake only the written section of the PEAK exam, Mr. Parks told her she had to retake both sections of the exam. In April 1995 Plaintiff retook the PEAK exam. According to Mr. Parks, Plaintiff failed the written and practical sections of the PEAK exam. Although Plaintiff admits Mr. Parks told her she failed the practical section, she claims that she retook the practical section and Mr. Parks told her she did a "good job." Plaintiff also contends that Mr. Parks erred in grading the written section of the exam and that she actually

---

[1] In her deposition testimony, Plaintiff states that when Mr. Parks gave the first PEAK exam, he called her into his office and said, "You passed the PEAK exam. I will hire you as a personal trainer." (Hindmarsh Depo. at 36.) Plaintiff also states in her deposition, however, that during the spring of 1994 Mr. Parks stated, "Madeline, *if* you pass my PEAK exam I will hire you as a personal trainer." (Hindmarsh Depo. at 137.) Plaintiff's affidavit also states that in March 1994 Mr. Parks told her that *if* she passed the PEAK exam, he would hire her. (Hindmarsh Aff. at ¶ 5.) Reviewing all of the evidence in the record, it therefore appears that Plaintiff concedes she did not pass the written section of the 1994 PEAK exam and that Mr. Parks said in 1994 that he would hire her as a personal trainer *if* she passed the PEAK exam.

passed it.  Plaintiff also claims that at least two male applicants, Matt Rivera and Jeff Kittler, failed the PEAK exam but were nonetheless hired as personal trainers during the summer of 1995.

On January 29, 1996,[2] Plaintiff filed a charge of discrimination with the EEOC alleging that she had applied for and was denied a position as a personal trainer in May, June, August, and December of 1995 although men and women under the age of forty had been promoted to personal trainer positions.  Plaintiff's amended complaint alleges that on January 23, 1996 she was retaliated against for filing the EEOC charge of discrimination when she received a warning for allegedly soliciting a written statement from one of the gym members supporting her attempt to become a personal trainer.[3]  According to Plaintiff, Defendant claimed that this was her third warning, although it was really her first.  Plaintiff also alleges that Mr. Parks and the General Manager/Owner of Defendant Defined Fitness, Jeff Oliveira, yelled at her, denied her the opportunity to work as a substitute, closely scrutinized her work, and reduced her classes and hours in retaliation for filing EEOC charges of discrimination.

On March 6, 1996, Plaintiff filed a second charge of discrimination with the EEOC alleging gender discrimination and retaliation.  On July 9, 1997, Defendant terminated Plaintiff's employment, ostensibly because of Plaintiff's excessive tardiness and negative attitude.   On July 21, 1997, Plaintiff filed a third EEOC charge of discrimination alleging retaliatory discharge.  In

---

[2] In Plaintiff's amended complaint she alleges that she filed the EEOC complaint on January 19, 1996, but the date written by her signature on the EEOC affidavit is January 29, 1996.  The Plaintiff's affidavit also states that she filed her first EEOC charge on January 29, 1996.  The parties' briefs also use this date.  It appears from the record, therefore, that Plaintiff's first EEOC charge was filed on January 29, 1996.

[3] Because Plaintiff appears to have filed her first EEOC charge on January 29, 1996, which is after January 23, 1996, this allegation does not make much sense.

Plaintiff's amended complaint she alleges that Mr. Parks filled Plaintiff's personnel file with fictitious written warnings to justify Defendant's termination of her employment. According to Plaintiff, she never received the January 9, 1995 Employee Warning Notice, which states that Plaintiff was late to class. (Ex. 6. to Resp.) She also claims not to have received the July 4, 1997 Employee Warning Notice stating that she was to be placed on thirty day suspension and that she would be terminated if she was late again. *Id.* Plaintiff does admit receiving an October 18, 1994 reprimand for missing a class. She also admits she was late for class on July 8, 1997, although she claims she never received a copy of the July 8, 1997 Employee Warning Notice until the parties were in litigation. (Hindmarsh Aff. ¶ 43, Ex. 4 to Resp.)

Plaintiff's age discrimination claims and her claims against Mr. Parks and Mr. Oliveira were dismissed with prejudice in a Stipulated Order Partially Dismissing Claims with Prejudice and Changing Caption, filed December 22, 1998, (Doc. No. 5). Plaintiff's amended complaint contains two remaining counts, Count I and Count III. Count I alleges that Plaintiff was denied a position as a personal trainer because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991.[4] Count III alleges that Defendant subjected Plaintiff to adverse employment actions in retaliation for engaging in statutorily protected conduct, in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991.

---

[4] Although Count I alleges only discriminatory failure to promote, in her prayer for relief for Count I, Plaintiff asks for damages arising from her termination.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(c).  "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).   The party moving for summary judgment bears the burden of  "'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the nonmovant to come forward with evidence showing that there is a genuine issue of material fact.  *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings, *id.*, and must present more than a mere scintilla of evidence in order to overcome a motion for summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 251 (1986).  At the summary judgment stage, the court is not permitted to weigh the credibility of witnesses.  *See Hirase-Doi v. U.S. West Communications Inc.*, 61 F. 3d 777, 785 n. 4 (10th Cir. 1995).

## III.     DISCUSSION

### A.     Title VII

Title VII prohibits an employer from discriminating against an employee on the basis of gender or in retaliation for opposing unlawful employment practices.  *See* 42 U.S.C. § 2000e-2(a) and § 2000e-3(a).  Although Plaintiff concedes that she has no direct evidence of discrimination, she may establish a claim of discrimination or retaliation indirectly through the use of

circumstantial evidence based upon the burden-shifting analysis in *McDonnell-Douglas Corp. v. Green*, 411 U. S. 792, 802-04 (1973). *See Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1328 (10th Cir.), *cert. denied*, --- U.S. --- , 120 S.Ct. 53 (1999); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993).

Under the *McDonnell Douglas* burden shifting analysis, a plaintiff bears the burden of establishing a prima facie case of discrimination or retaliation. *See Sauers*, 1 F.3d at 1128. If a plaintiff the accomplishes this task, the employer has the burden of coming forward with a nondiscriminatory explanation for its challenged employment action. *See id*. To overcome a motion for summary judgment when the plaintiff has successfully set forth a prima facie case and the defendant has offered a legitimate nondiscriminatory reason for the challenged employment action, the "plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1321 (10th Cir. 1997) (citing *Randle v. City of Aurora*, 69 F.3d 441, 452 (10th Cir. 1995)). A plaintiff may establish pretext by demonstrating "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employee did not act for the asserted non-discriminatory reasons.'" *Morgan*, 108 F.3d at 1323 (citation omitted). Other "[e]vidence of pretext may include, but is not limited to . . . . prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." *Simms*, 165 F.3d at 1328 (citation omitted). A plaintiff's "mere conjecture that [her] employer's explanation is a pretext for intentional

discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

**B.    Retaliation claim**

Plaintiff's amended complaint alleges that Defendant retaliated against her for engaging in statutorily protected conduct, including her filing of EEOC charges of discrimination.

In her response, Plaintiff argues that Defendant retaliated against her for failing to participate in sexual activity with Mr. Parks, Mr. Park's lover, and another Defined Fitness employee, Jody Glass, during a September 1994 vacation to Taos, New Mexico.  At the pretrial conference, Plaintiff also contended that Defendant retaliated against her by failing her on the PEAK exam and fabricating bogus reprimands.

*1.    Prima facie case*

To establish a prima facie case of retaliation under Title VII, a plaintiff must present evidence establishing a genuine issue of fact that: (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action by the employer against her contemporaneous with or subsequent to the protected activity; and (3) there is a causal connection between the protected activity and the adverse action.  *See Archuleta v. Colorado Dept. of Institutions, Div. of Youth Services,* 936 F.2d 483, 486 (10th Cir. 1991); *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1381 (10th Cir. 1994).

a.    protected opposition to discrimination

Plaintiff failed to allege any facts in her amended complaint regarding the September 1994 Taos trip.  Although she now argues that her failure to participate in sexual activities during this trip was the source of Defendant's retaliation, 42 U.S.C. § 2000e-3(a) protects employees against

retaliation only for "opposing any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"--not for failing to engage in sexual activities. To the extent that Plaintiff now contends that her failure to submit to sexual activity with Mr. Parks resulted in Defendant's withholding tangible employment benefits, this argument would fall under a quid pro quo sexual harassment theory, which is a claim Plaintiff has not alleged. *See Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1416 (10th Cir. 1993) ("To prevail on a quid pro quo discrimination claim, the plaintiff must show that concrete employment benefits were conditioned on submission to sexual conduct.") (citation omitted).

Plaintiff's filing of the EEOC charges of discrimination on January 29, 1996 and March 6, 1996, however, constitute statutorily protected conduct that satisfy the first prong of the prima facie analysis.

b.    adverse employment action subsequent to protected activity

The Tenth Circuit "liberally defines adverse employment action," and takes a case-by-case approach to determining whether a given employment action is "adverse." *Jeffries v. State of Kansas,* 147 F.3d 1220, 1232-33 (10th Cir. 1988) (holding that verbal interrogation and reprimand and threats to withdraw supervision and not renew the employee's contract were sufficient to constitute adverse employment actions even though the actions did not actually have an adverse impact on the terms and conditions of the employee's employment).

Although Count III is not particularly clear regarding her allegations of adverse employment action, Plaintiff apparently alleges the following actions constituted adverse employment actions: her July 9, 1997 discharge; Mr. Parks and Mr. Oliveira's yelling at and

publicly belittling of Plaintiff; Defendant's denial of her opportunity to work as a substitute

aerobics instructor; Defendant's close scrutiny of her work; Defendant's procedures required of

her that were not required of other employees; and Defendant's significant reduction of her

classes and hours. (Am. Compl. ¶ 28.)

Although Plaintiff argues that she suffered an adverse action when Mr. Oliveira yelled at

her during a February 6, 1996 meeting, this arguments is not persuasive. *See Munday v. Waste

Management of North America, Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (holding that there was

no adverse employment action when employer yelled at employee). Based on the facts of this

case, Mr. Oliveira's alleged yelling at Plaintiff, standing alone, does not constitute an adverse

employment action. *See Jeffries*, 147 F.3d at 1232 (holding that Tenth Circuit takes a case-by-

case approach to determining whether an employment action is "adverse.").

Regarding Plaintiff's claim that Defendant denied her the opportunity to work as a

substitute aerobics instructor, Plaintiff submitted the affidavit of Ruby Rose Macias stating that

Mr. Parks told her not to call Plaintiff to cover an aerobics class until all of the other instructors

had been called and that Plaintiff was the "last resort." (Macias Depo. at ¶ 12, Ex. 5 to Resp.)

Plaintiff has not, however, produced any admissible evidence regarding the number of hours she

substituted before and after Defendant allegedly began to retaliate against her. In her affidavit,

Plaintiff even states that she had "substituted repeatedly" between July 4, 1997 and July 8, 1997,

which was just prior to her termination. (Hindmarsh Aff. at ¶ 40.) While Plaintiff claims that the

August 30, 1996 change regarding the rules of finding a substitute aerobics instructor resulted in a

decrease in the number of hours Plaintiff was a substitute instructor, she concedes that the August

30, 1996 change in the rules applied to all of the instructors--not just Plaintiff. (Hindmarsh Depo.

at 83.)  Plaintiff's evidence regarding her claim that Defendant's alleged denial of her opportunity to substitute teach aerobics classes is simply insufficient to establish that this constituted an adverse employment action.

Defendant argues that Plaintiff's claims regarding limitation of classes and hours and excessive monitoring of Plaintiff's work should also be dismissed because they do not constitute adverse employment actions and because Plaintiff has not submitted any admissible evidence to support these claims.  Plaintiff failed to respond to these arguments.  (Resp. at 16-20.)  Failure to respond to these arguments constitutes consent to grant them.  *See* D.N.M.LR-Civ 7.5(b) (failure to file "a response in opposition to any motion constitutes consent to grant the motion"); *Gutierrez v. Deming Public Schools*, No. 95-2277, 1996 WL 364617 (10th Cir. 1996) (holding that plaintiff's failure to respond to motion to dismiss justified dismissal of plaintiff's complaint). Moreover, Plaintiff admits that she consistently taught eight aerobics classes a week, (Hindmarsh Depo. at 85), which undermines her claim that Defendant limited the number of classes and hours she worked.  Plaintiff has also not set forth any admissible evidence regarding how Defendant's alleged excessive scrutiny of her work affected her "authority, her standing, her rate of pay, her performance evaluations, her ability to perform, or her chances for promotion."  *See Penry v. Federal Home Loan Bank of Topeka*, 970 F. Supp. 833, 841 (D. Kan. 1997) (holding that close monitoring of employee break times did not constitute adverse action), *aff'd,* 155 F.3d 1257 (10th Cir. 1998).

At the pretrial conference, Plaintiff contended that she suffered a retaliatory adverse employment action when Mr. Parks failed her on the 1994 and 1995 PEAK exams.  To establish a prima facie case, Plaintiff must present evidence that these allegedly adverse actions occurred

*contemporaneously with or subsequent to* engaging in protected opposition to discrimination. *See Archuleta*, 936 F.2d at 486; *Cole*, 43 F.3d at 1381. As discussed, *supra*, the only protected opposition to discrimination that Plaintiff engaged in during her employment was filing two EEOC charges of discrimination in 1996--which occurred *after* Defendant allegedly failed Plaintiff on the PEAK exams in 1994 and 1995. Defendant obviously could not have retaliated against Plaintiff in 1994 and 1995 for something that she did in 1996.

At the pretrial conference Plaintiff also claimed that Defendant retaliated against her by fabricating bogus reprimands. Although it is not entirely clear, Plaintiff apparently contends that Mr. Parks fabricated these bogus reprimands "after the fact," (Tr. at 15). It therefore appears that Plaintiff claims that *after* Plaintiff's discharge, Mr. Parks created phoney Employee Warning Notices, which were subsequently submitted to the EEOC, to justify Plaintiff's discharge.[5] (Tr. at 15.) While this evidence is relevant to other issues, Plaintiff obviously could not have experienced an adverse employment action after she was no longer employed. Therefore, she has not established a prima facie case regarding Defendant's allegedly retaliatory creation of bogus reprimands.

Plaintiff's discharge, however, clearly qualifies as an adverse employment action. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998).

---

[5] At the pretrial conference, Plaintiff's counsel stated, "[w]e contend that Mr. Parks fabricated information. Submitted false information to the EEOC investigator to try and support their position." (Tr. at 15.)

c.     causal connection

In the Tenth Circuit, "[a] casual connection is established where the plaintiff presents 'evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1507 (10th Cir. 1996) (citation omitted).  The Tenth Circuit has " held that '[t]he causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (citations omitted).  While the Tenth Circuit has "rejected attempts to unduly stretch the 'close temporal proximity' required under this standard, *see Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir. 1994), and cases cited therein,"[6] the Tenth Circuit has also stated that it "believe[s] that the phrase 'closely followed must not be read too restrictively where the pattern of retaliatory conduct begins soon after the filing of [a complaint of discrimination] and only culminates later in actual discharge." *Marx v. Schnuck Markets*, 76 F.3d 324 (10th Cir.) (citing *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 n. 4 (6th Cir.1984) (reversing judgment for defendant and remanding for further consideration of Title VII retaliation claim where discharge occurred nearly one and one-half years after complaint but pattern of retaliation allegedly began soon after complaint was filed), *cert. denied*, 518 U.S. 1019 (1996).

Because Plaintiff's termination occurred eighteen months after she filed her first EEOC

_____

[6] *See also Conner*, 121 F.3d at 1395 (holding that a four month lag between protected activity and termination "by itself would not be sufficient to justify an inference of causation"); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (holding that standing alone a three month lag between an employee's protected activity and termination was insufficient to support an inference of causal connection).

charge of discrimination, and sixteen months after filing her second EEOC charge of discrimination, Plaintiff will "need to rely on additional evidence beyond mere temporal proximity to establish causation," such as establishing a pattern of retaliatory conduct that began shortly after she filed her EEOC charges of discrimination. *Conner*, 121 F.3d at 1295 (citing *Marx*, 76 F.3d at 329).

Plaintiff argues that this additional evidence is that between March 1996 and July 1997 she never received any follow-up Employee Warning Notices, despite the fact Defendant now contends that she was late to work on numerous occasions during this period. In Mr. Oliveira's affidavit he states that between the end of January 1996 and July 1997 Plaintiff was late for work on nine occasions. (Olivera Aff. at ¶¶ 24-32, Ex. A to Defendant's Memo.) Plaintiff seems to concede that she was late for work on March 28, 1997 and on July 8, 1997. (Hindmarsh Depo. at 96, 105-06, Ex. B to Defendant's Memo.) She denies being late on the other dates or claims another instructor was at fault for failing to inform a class of a new time. The Employee Warning Notices included in the record, (Ex. 6 to Resp.), reveal that the only Employee Warning Notices issued to Plaintiff from the time she filed her first EEOC charge of discrimination until the time she was fired were: 1.) a notice dated January 23, 1996 for allegedly soliciting a letter of support from a member, although Plaintiff crossed out the date and wrote "3/6/96," claiming that she did not receive the notice until that date; 2.) a July 4, 1997 notice for alleged tardiness stating that Plaintiff was to be placed on thirty day suspension and that she would be terminated if she was late again, although this notice is not signed by Plaintiff and she claims to have never received it, (Hindmarsh Depo. at 96, Ex. 1 to Resp.); 3.) a July 8, 1997 notice for alleged tardiness that is unsigned by Plaintiff, which she also denies having received, (Hindmarsh Depo. at 97, Ex. 1 to

Resp.).

As Plaintiff points out, the only dates of the Employee Warning Notices that correspond with the dates on which Plaintiff was allegedly late to work are July 4, 1997 and July 8, 1997; Plaintiff denies having received either notice at the time it was allegedly issued. Plaintiff also denies having received a January 9, 1995 notice, (Depo. at 89), which is also unsigned by Plaintiff. The absence of Plaintiff's signature on these Employee Warning Notices, and her denial under oath that she ever received them, gives rise to a genuine issue of material fact regarding whether Defendant fabricated these notices post-termination to justify Plaintiff's discharge. If so, it is reasonable to infer that Defendant may have created these reprimands to cover-up for having retaliated against Plaintiff. Further evidence that would support this reasonable inference is the discrepancy between the date written on the Employee Warning Notice dated by Defendant as January 23, 1996, and re-dated by Plaintiff as March 6, 1996. The difference in the dates gives rise to a genuine issue of material fact regarding when Plaintiff received this notice and whether it was issued in retaliation for filing her first EEOC charge of discrimination, especially because Plaintiff states in her affidavit that on February 6, 1996 Mr. Oliveira called her into his office, yelled at her, pointed his finger in her face, and stated, "I received the EEOC charge . . . [w]e are going to overcome you." (Hindmarsh Aff. at ¶ 31.) According to Plaintiff, he also brought up a complaint from a gym member and implied that he could use it against her. *Id.* A reasonable jury could determine that Mr. Oliveira carried out this threat by reprimanding Plaintiff on March 6, 1996 for having solicited a letter of support from a gym member. Alternatively, a reasonable jury could find that Defendant did issue the July 4, 1997 and July 8, 1997 reprimands on those dates, and that Plaintiff did receive them but failed to sign them, and that these reprimands were part of a

pattern of retaliatory conduct that culminated in Plaintiff's discharge.

Although Plaintiff's evidence of causal connection is minimal, and will have to be re-evaluated after she has presented her evidence at trial, I conclude that at this point it is sufficient to establish her prima facie case of retaliatory discharge.

### 2. *Legitimate non-discriminatory reason*

Defendant has satisfied its burden of coming forward with a legitimate non-discriminatory reason for firing Plaintiff--her tardiness and alleged negative attitude. Plaintiff concedes that she was late to work on October 18, 1994, December 18, 1995, March 28, 1997, and on July 8, 1997.

### 3. *Pretext*

Based on the evidence discussed in connection with Plaintiff's establishment of a causal connection between her protected opposition to discrimination and her July 1997 discharge, I conclude that Plaintiff has shown, although barely, "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employee did not act for the asserted non-discriminatory reasons.'" *Morgan*, 108 F.3d at 1323 (citation omitted). Therefore, Defendant's motion for summary judgment on Plaintiff's claim of retaliatory discharge should be denied.

### C.  Discrimination Claim

Although Plaintiff's amended complaint and her response to Defendant's motion for summary judgment base Plaintiff's gender discrimination claim only on Defendant's failure to promote her, (Resp. 11-16), at the pretrial conference Plaintiff contended that her gender discrimination claim encompasses both her failure to be promoted and her discharge.

1.     *failure to promote*

a.     prima facie case

To establish Plaintiff's prima facie case regarding her failure to promote claim based on gender discrimination, Plaintiff must show that she (1) belongs to a protected group; (2) was qualified for an available position; (3) was not promoted despite being qualified; and (4) that the position remained open or was filled by a male. *See Randle v. City of Aurora*, 69 F.3d 441, 451 n. 13 (10th Cir. 1995). The parties agree that Plaintiff belonged to a protected class and that Plaintiff was not promoted to the position of personal trainer but disagree on the other two elements required to make a prima facie showing of discriminatory failure to promote.[7]

Plaintiff claims that she was qualified for the position because she had experience managing four fitness centers and because she had four national certificates, including ACE as a personal trainer, AEA in water aerobics, AFAA in aerobics and AFAA in step aerobics. The only experience that would be relevant to the personal instructor position would be Plaintiff's ACE certification as a personal trainer. However, Plaintiff received this certification in 1996 *after* she had applied for the personal trainer position in 1994 and 1995. (Hindmarsh Depo. at 14, Ex. B to Defendant's Memo.)

Plaintiff also attempts to create a genuine issue of material fact regarding whether she was qualified by arguing that she actually passed the PEAK exam when she took it in 1995. In support of this claim, Plaintiff submitted the affidavit of Ms. Catherine Sovereign, who worked as an aerobics instructor at Defined Fitness and taught nutrition and dental hygiene. According to

---

[7] Defendant argues that the personal trainer position was not a "promotion." Having reviewed the evidence, I find this argument unpersuasive.

Ms. Sovereign, Mr. Parks erred in grading the exam.

This evidence is insufficient to create a genuine issue of material fact regarding whether Plaintiff passed the written section of the PEAK exam, however, because Ms. Sovereign has no personal knowledge of how the exams were graded. Unfortunately, Plaintiff apparently never deposed the one person who possessed this knowledge--Mr. Parks. Plaintiff also inexplicably failed to provide the Court with copies of her written 1995 PEAK exam or the written PEAK exams of other applicants,[8] which could have revealed that Plaintiff's exam was scored differently than that of male applicants. Plaintiff also failed to specifically identify which questions she claims were improperly scored. When asked in her deposition whether Plaintiff could point to specific questions that were improperly graded, she said she could not. (Hindmarsh Depo. at 40.)

Plaintiff's argument that passing the PEAK exam was not a prerequisite to being promoted, implying that she did not need to pass the PEAK exam to be qualified for a personal trainer position, is also unavailing because Plaintiff has failed to submit admissible evidence establishing that male applicants were hired for the position despite having failed the PEAK exam. Plaintiff testified in her deposition that "to the best of my knowledge" Jeff Kittler failed the PEAK exam but was nevertheless hired as personal trainer and that Matt Rivera told Plaintiff that he was also hired despite having failed the PEAK exam. Plaintiff's deposition testimony is based on hearsay and speculation rather than personal knowledge. Therefore, her testimony on this issue will not be considered. *See* Fed. R. Civ. P. 56(e) (stating that an affidavit submitted in opposition to a motion for summary judgment must be based on "personal knowledge"). Again, it is

---

[8] At the pretrial conference Plaintiff's stated that the grading sheet on the written section of the PEAK exam had been made part of the record. A careful review of the record in this case, however, reveals that neither the grading sheet nor any PEAK exam is part of the Court's record.

unfortunate and inexplicable that Plaintiff did not depose either of these two individuals or obtain affidavit testimony from them.

Plaintiff also contends that Ms. Glass, who had participated in sexual activities with Mr. Parks on the 1994 Taos trip, was promoted to a personal trainer position despite having never taken the PEAK exam. (Hindmarsh Aff. at 4.) Plaintiff's affidavit, however, fails to state how she has any personal knowledge of whether Ms. Glass had taken the PEAK exam. More importantly, even if Mr. Parks did promote Ms. Glass because she had engaged in sexual activity with him, this evidence is completely irrelevant to Plaintiff's case of discriminatory failure to promote based on gender. The Tenth Circuit has "decline[d] to extend Title VII to include consensual romantic involvements." *Taken v. Oklahoma Corp. Comm'n*, 125 F.3d 1366, 1368 (10th Cir. 1997). While it may be unfair for an employer to favor an employee with whom he or she is having an affair, the Tenth Circuit has said time and time again, "[f]avoritism, unfair treatment and unwise business decisions do not violate Title VII unless based on a prohibited classification." *Id.*

Finally, Plaintiff submitted an affidavit from Ruby Rose Macias stating that between December 1995 and January 1998, "to my best belief all of the floor instructors were gay men." (Macias Aff. at ¶ 7, Ex. 5 to Resp.) Rule 56(e) of the Federal Rules of Civil Procedure, however, requires that an affidavit submitted in opposition to a motion for summary judgment be based on "personal knowledge," not an affiant's "best belief." Moreover, Ms. Macias' testimony is directly contradicted by Plaintiff's own statements. In her EEOC charge of discrimination, Plaintiff states that in May 1995 Mr. Parks hired several people for the personal trainer positions, "[b]oth male *and female*." (EEOC affidavit, Ex. C to Defendant's Memo.) In her deposition, Plaintiff testified

that women in addition to Ms. Glass were promoted to a personal trainer position. (Hindmarsh Depo. at 150.)

A careful review of the evidence reveals that Plaintiff has failed to establish a genuine issue of discriminatory failure to promote based on gender because she has not shown that there is a genuine issue of material fact regarding whether she was qualified for the position and whether the personal trainer positions for which she applied remained open or were filled by men.

b.    legitimate nondiscriminatory reason

Assuming, *arguendo*, that Plaintiff had succeeded in establishing a prima facie case of discrimination, the next step in the analysis would be to determine whether Defendant articulated a legitimate nondiscriminatory reason for failing to promote Plaintiff.  Defendant claims it did not promote Ms. Hindmarsh because she had not passed the PEAK exam and because of her alleged excessive tardiness.  "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the [challenged action]; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide . . . ." *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (footnote and citations omitted).  Plaintiff admits she was late to work on October 18, 1994 and December 18, 1995. The Defendant has also submitted evidence that she failed the PEAK exam in 1995 and that she requested that the written section not be graded in 1994.  (Oliveira Aff. ¶¶ 12-14.)  Therefore, Defendant has met its burden of establishing a legitimate nondiscriminatory reason for failing to promote Plaintiff.

c.    pretext

For reasons discussed in detail above in the analysis of Plaintiff's prima facie case, a

review of the evidence demonstrates that Plaintiff has failed to show "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employee did not act for the asserted non-discriminatory reasons.'" *Morgan*, 108 F.3d at 1323 (citation omitted). Morever, Plaintiff admits that other women were promoted to the personal trainer position. "An employer's similar or favorable treatment of protected employees does not support an inference of discriminatory animus." *See Aramburu*, 112 F.3d 1398, 1406 n. 4 (10th Cir. 1997). Therefore, even if Plaintiff had established a prima facie case of gender discrimination regarding her failure to promote claim--which she has not done--Defendant's motion for summary judgment on this issue should be granted.

      2.    *discharge*

        a.    <u>prima facie case</u>

At the pretrial conference Plaintiff claimed that she had raised in her amended complaint a discriminatory discharge claim. Neither Plaintiff's amended complaint nor her response clearly indicated, however, that Plaintiff was pursuing a claim of discriminatory discharge. In Plaintiff's complaint, she alleges that she was fired "for no reason and without prior warnings," (Am. Compl. ¶ 33), and that on July 21, 1997 she "filed a third charge with the E.E.O.C. [ ] alleging *retaliation* as is evidenced by her termination," (Am. Compl. ¶ 35) (emphasis added). Count I, which is titled "Title VII Sex Discrimination," alleges only that she was not promoted while males or younger applicants were. The only allegation contained in Count I that would even remotely suggest that Plaintiff was asserting a discriminatory discharge claim is that in Plaintiff's prayer for relief contained in Count I she asks for damages for Defendant's "wrongful discharge" of her.

This hardly satisfies the requirement of Fed. R. Civ. P. Rule 8(a) that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Plaintiff's response does not provide much elucidation regarding any discriminatory discharge claim. In her response Plaintiff argues that she has made a prima facie case for sexual discrimination based on her *failure to be promoted*--not her discharge. (Resp. at 11-16.) She also argues that she has established a prima facie case of *retaliation*--not discrimination--based on her discharge. (Resp. at 16-18.) Only on the last page of her response does Plaintiff state that she was fired for "an inappropriate sexual encounter and Plaintiff's discomfort with Daren Parks' sexual lifestyle." Based on the vagueness of Plaintiff's amended complaint and her response, Plaintiff's discriminatory discharge claim should be dismissed.

Even if I considered Plaintiff's discriminatory discharge claim, however, it should be dismissed because Plaintiff has failed to establish a prima facie case. Because Plaintiff has never clearly raised this claim, it is exceedingly difficult to guess at what Plaintiff's argument on this issue might be or to deduce which version of the prima facie case Plaintiff believes is applicable. Citing to *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312 (10th Cir. 1992) and *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1380 (10th Cir. 1994), Defendant asserts that the elements of Plaintiff's prima facie case of discriminatory discharge are: 1.) that she belonged to a protected class; 2.) that she was doing satisfactory work; 3.) that she was adversely affected by the Defendant's decisions; and 4.) that she was treated less favorably than her similarly situated male counterparts. (Memo. at 14.) Because Defendant claims to have discharged Plaintiff because of her excessive tardiness in violation of the provision of the "Defined Fitness Employee Handbook Rules and Regulations Aerobic Instructor" governing punctuality, Plaintiff's discriminatory discharge claim

could also fall under the category of cases in which an employer ostensibly discharged an employee for violating a work rule.[9] To establish a prima facie case on a claim of discriminatory discharge, where the plaintiff was discharged for the purported violation of a work rule, the plaintiff must show that (1) she is a member of a protected class, (2) that she was discharged for violating a work rule, and (3) that similarly situated male employees were treated differently. *Aramburu*, 112 F.3d at 1403 (citation omitted). Under either standard, Plaintiff has failed to meet her burden of establishing a prima facie case of gender discrimination because she has not shown that similarly situated males were treated differently or more favorably than she was. The record is devoid of any evidence of male aerobic instructors or other employees who violated work rules of comparable seriousness but were not fired.

While Plaintiff argued at the pretrial conference that her refusal to engage in sexual activities during the 1994 Taos trip was the real reason Defendant discharged Plaintiff in July 1997 and that this constituted gender discrimination, this evidence would be relevant to a quid pro quo claim of sexual harassment, which Plaintiff has not alleged. Moreover, this incident occurred nearly three years before Plaintiff's discharge and, even if true, is simply too attenuated in time to allow a reasonable fact finder to determine that Defendant terminated Plaintiff for failing to have engaged in sexual relations with Mr. Parks three years earlier.

Finally, Plaintiff failed to respond to Defendant's argument that any discriminatory discharge claim she was alleging should be dismissed because she failed to establish a prima facie case. (Defendant's Memo. at 14; Resp. at 11-20.) Failure to respond to an argument constitutes

---

[9] Although the "Defined Fitness Employee Handbook Rules and Regulations Aerobic Instructor" is apparently not in the record, at Plaintiff's deposition she read into the record the provision of the handbook governing punctuality. (Hindmarsh Depo. at 139-40.)

consent to grant it.  *See* D.N.M.LR-Civ 7.5(b) (failure to file "a response in opposition to any motion constitutes consent to grant the motion"); *Gutierrez v. Deming Public Schools*, No. 95-2277, 1996 WL 364617 (10th Cir. 1996) (holding that plaintiff's failure to respond to motion to dismiss justified dismissal of plaintiff's complaint).

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is:

1.  GRANTED as to Plaintiff's Title VII claim of gender discrimination, which should be dismissed with prejudice;

2.  GRANTED as to Plaintiff's Title VII claims of retaliation based on the following alleged adverse actions, which should be dismissed with prejudice: Mr. Parks and Mr. Oliveira's alleged yelling and publicly belittling of Plaintiff, Defendant's denial of her opportunity to work as a substitute aerobics instructor, Defendant's close scrutiny of her work, Defendant's requiring procedures of Plaintiff that were not required of other employees, Defendant's reduction of Plaintiff's classes and hours, Defendant's failing Plaintiff on the PEAK exam, and Defendant's fabrication of bogus reprimands; and

3.  DENIED as to Plaintiff's Title VII retaliatory discharge claim arising from Plaintiff's filing of the January 29, 1996 EEOC charge of discrimination and the March 6, 1996 EEOC charge of discrimination.


_____
UNITED STATES DISTRICT COURT JUDGE